**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| COVEY RUN, LLC,<br>        Plaintiff,<br><br>        v.<br><br>WASHINGTON CAPITAL, LLC, *et al.*,<br>        Defendants. | Civil Action No. 1:15-1997 (CKK) |

**MEMORANDUM OPINION**
(July 11, 2016)

Plaintiff Covey Run, LLC ("Covey Run" or "Plaintiff") brings this action alleging that Defendants Washington Capital, LLC ("Washington Capital"), Jemel Lyles, Melvin Sanders, and Steve Evans (collectively, the "Washington Defendants") perpetrated a fraudulent scheme that culminated in the alleged theft of $1.2 million from Covey Run.  Covey Run alleges that Defendant Washington Capital breached its contract with Covey Run by accessing $1.2 million held in escrow without the prior written knowledge and consent of Covey Run.  Covey Run further alleges that Defendants L. Gregory Loomar ("Loomar") and the Law Offices of L. Gregory Loomar P.A. ("Loomar, P.A."), (collectively, the "Loomar Defendants"), failed to meet their fiduciary duties as the escrow agent for the funds in question, and that Defendant Michael Blackwell ("Blackwell") negligently misrepresented to Covey Run that Defendant Washington Capital was a reputable private equity firm.  In addition, Covey Run alleges a claim of fraud and a claim of conversion against the Washington Defendants.

Presently before the Court is the Loomar Defendants' [19] Amended Joint Motion to Dismiss Plaintiff's Complaint (the "Motion to Dismiss").  Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court DENIES the Loomar Defendants' Amended Joint Motion to Dismiss.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint.  The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court reserves further additional presentation of the background, as necessary, for the discussion of the legal issues below.

As Plaintiff recounts in its Complaint, Covey Run is a Minnesota limited liability company established in 2010 to develop assisted living housing for seniors in Sheridan, Wyoming.  Compl. ¶ 1.  Seeking funding to purchase property for this purpose, a Covey Run representative met with Defendant Blackwell and another individual named Karen Baas.  *Id.* ¶ 14.  Representing that they were licensed brokers working on behalf of a reputable private equity firm known as Washington Capital, Blackwell and Baas introduced Covey Run to Washington Capital's main representative, Defendant Sanders.  *Id.* ¶ 14.  Washington Capital thereafter

---

[1] The Court's consideration has focused on the following documents:  Pl.'s Complaint, ECF No. [1], Loomar Defs.' Amended Joint Motion to Dismiss, ECF No. [19]; Pl.'s Opp'n to Loomar Defs.' Amended Joint Motion to Dismiss, ECF No. [24]; and Loomar Defs.' Reply in Support of their Motion, ECF No. [27].  In addition, the Court has considered the documents attached to, or incorporated in the Complaint, as well as the documents appended to the Loomar Defendants' Amended Joint Motion to Dismiss, as their authenticity is not disputed and they are referred to in the complaint and integral to the claim.  *See Ibrahim v. Mid-Atl. Air of DC, LLC,* 802 F. Supp. 2d 73, 75 (D.D.C. 2011), *aff'd*, No. 11-7150, 2012 WL 3068460 (D.C. Cir. July 19, 2012)

represented to Covey Run that it was a private equity firm created to assist companies in their lending needs and was associated with Lloyd Bancaire of Luxembourg, Standard Charter Bank of the United Kingdom, and Deutsche Bank of Germany.  *Id.* ¶ 15.  Washington Capital further represented that it could secure a $10 million loan from these banks to fund Covey Run's development project, which was anticipated to cost $12 million.  *Id.* ¶ 16.

On or about May 8, 2014, Washington Capital drafted and presented a Letter of Commitment to Covey Run outlining the terms of the proposed Wyoming development project. *Id.* ¶ 20; *see also* LOC (Ex. 2 to Pl.'s Complaint, ECF No. [1-4]).  Executed by the parties shortly thereafter, the Letter of Commitment stated that Covey Run would invest $1.2 million in the project, and Washington Capital would invest $660,000.  *See* LOC § 1 (Ex. 2 to Pl.'s Complaint, ECF No. [1-4], at 3).  Under Section 2.2 of the Letter of Commitment, the parties agreed that the $1.2 million held in escrow would be "used first for the payments of the project['s] costs."  *See* LOC § 2.2 (Ex. 2 to Pl.'s Complaint, ECF No. [1-4], at 6).  Under Section 2.4, the parties appointed the Law Offices of L. Gregory Loomar, P.A. to serve as the escrow agent.  *See* LOC § 2.4 (Ex. 2 to Pl.'s Complaint, ECF No. [1-4], at 7).

Thereafter, Washington Capital presented loan and financial information to Covey Run for it to sign.  Pl.'s Compl. ¶ 24.  In particular, Washington Capital presented a Loan Agreement and other documents concerning the $10 million loan.  *Id.*  Defendant Evans signed the Loan Agreement and other related documents on behalf of Washington Capital, and Defendant Sanders signed certain documents as managing member of Washington Capital.  *Id.*; *see also* Loan Agreement (Ex. 4 to Pl.'s Complaint, ECF No. [1-6]).

On or about July 8, 2014, Covey Run and Washington Capital entered into "Addendum A," which was expressly incorporated into the Letter of Commitment.  *See* Addendum at 2 (Ex. 1

to Loomar Defs.' Motion to Dismiss, ECF No. [19-2]).  Addendum A contained a number of

sections further delineating the scope of the Escrow Agent's duties and responsibilities.

Specifically:

- Section 14.1.C required the Escrow Agent to "receive and distribute" the $1.2 million in funds deposited by Covey Run "in accordance with Section 2.2" of the Letter of Commitment.[2]  Addendum § 14.1.C (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2], at 3).

- Section 14.3.A required that the Escrow Agent "shall receive funds and distribute funds strictly in accordance with the terms and conditions of the Letter of Commitment" and "shall disburse the funds deposited with the Escrow Agent in accordance with the Terms and Conditions of the Letter of Commitment."  Addendum §§ 14.3.A.b, 14.3.A.c (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2], at 4-5).

- Section 14.7 expressly limited the Escrow Agent's duties under the contract, stating, notwithstanding any provision to the contrary, that:

    A. The Escrow Agent is obligated only to perform the duties specifically set forth in this Addendum 'A' and the Letter of Commitment, which shall be deemed purely ministerial in nature;

    B. The Escrow Agent will not be responsible or liable for the failure of Washington Capital or the Borrower or any other Party to perform in accordance with the Letter of Commitment;

    C. The Escrow Agent shall have no duty to know or inquire as to the performance or nonperformance of any provision of the Letter of Commitment or any other document between Washington Capital and the Borrower other than the Letter of Instruction defined in this Agreement;

    D. In regards to the references in this Addendum "A" and the Letter of Commitment to any other agreement, instrument, or document between Washington Capital and the Borrower, the Escrow Agent has no duties or obligations with respect thereto; and

    E. This Agreement sets forth all matters pertinent to the escrow contemplated hereunder vis-a-vis the Escrow Agent's responsibilities, and no additional obligations of the Escrow Agent shall be inferred or implied from the terms of this Addendum "A" and the Letter of Commitment.

---

[2] As discussed above, Section 2.2 sets forth the requirement that the funds deposited by Covey Run be "used first for the payments of the project['s] costs."  *See* LOC § 2.2 (Ex. 2 to Pl.'s Complaint, ECF No. [1-4], at 6).

  
Addendum § 14.7 (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2], at 6-7).

- Finally, Section 14.9 of Addendum A provided that:

    A. The Escrow Agent shall not be liable for any action taken or not taken by it in accordance with the direction or consent of Washington Capital or the Borrower or their respective authorized agents, representatives, successors, or assigns; and

    B. The Escrow Agent shall not be liable for acting or refraining from acting upon any notice, request, consent, direction, requisition, certificate, order, affidavit, letter, or other paper or document believed by it to be genuine and correct and to have been signed or sent by the proper person or persons, without further inquiry into the person's or persons' authority.

Addendum §§ 14.9 (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2], at 7).

Consistent with the terms of the Letter of Commitment and Addendum A, Covey Run subsequently sent its $1.2 million in equity funds by wire transfer to a Wells Fargo Bank account named "L. Gregory Loomar, PA Escrow Account" via two installments, one payment on July 18, 2014 in the amount of $850,000, and another on August 11, 2014 in the amount of $350,000. Pl.'s Compl. ¶¶ 21, 23.[3]  Loomar confirmed in a signed receipt that he had received the wire transfers for the equity money, and represented that he sent a copy of the receipt to Covey Run, located at 340 S. Hwy 10, St. Cloud, Minnesota, and to Washington Capital, located at 1050 Connecticut Ave., NW, 10th Floor, Washington, D.C.  *Id.* ¶ 23; *see also* Equity Money Receipt (Ex. 3 to Pl.'s Complaint, ECF No. [1-5]).

---

[3] As noted in the Complaint, there is a discrepancy between a receipt that Loomar produced for the $350,000 wire transfer and other records concerning the transaction. Loomar's ledger report and Covey Run's records show that Covey Run wire transferred the equity money into the escrow account on August 11, 2014, but Loomar's receipt states that he received the money on July 18, 2014.  Pl.'s Compl. ¶ 23 n.11.

Additionally, on the same days that Covey Run transferred the money to the escrow account, Loomar transferred the money to Defendant Lyles.  Pl.'s Compl. ¶ 37; *see also* Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12], at 4).  As to the wire transfer of $850,000 made on July 18, 2014, Loomar immediately disbursed approximately $847,000.00 to Washington Capital's bank account in Washington, D.C., while retaining approximately $2,900, which was transferred to his law firm's bank account.  *Id.*; *see also* Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12], at 4).  Similarly, as to the wire transfer Covey Run made on August 11, 2014, Loomar wire transferred the money to Washington Capital that same day, sending approximately $348,000 after retaining approximately $875.00 for his law firm.  *Id.* ¶ 38; *see also* Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12], at 6).

Loomar appeared to have issued the wire transfers pursuant to instructions received from Washington Capital, in an email from Defendant Lyles dated July 16, 2014 (which pre-dates the wire transfers).  *Id.* ¶ 39; *see also* Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12], at 10).  The email sent by Lyles to Loomar stated simply, "Greg please send the $1,200,000.00, less your fee to [Washington Capital's bank account]."  Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12], at 10).  Neither Loomar nor anyone from his law office contacted Covey Run prior to disbursing the funds, nor did they notify Covey Run after the distribution of the funds.  Pl.'s Compl. ¶ 40.

Covey Run, unaware that its $1.2 million equity payment had been transferred out of the escrow account, proceeded forward with its attempts to close on the loan.  According to the Complaint, Washington Capital represented that closing would be accomplished 60 days after the escrow agent received the first equity funds, which would have provided for a closing date of mid-to-late September 2014.  *Id.* ¶ 26.  The parties scheduled the date for closing on the loan and

the purchase of the Wyoming property for November 1, 2014. *Id.* ¶ 27. The closing, however, was repeatedly pushed back at the request of Washington Capital, and in fact, never occurred. *See id.*

By December 15, 2014, Washington Capital had still not agreed to close on the transaction and purportedly took issue with its title company's requirements. *Id.* ¶ 28. On this date, it sent notice, through Defendant Sanders, to the title company that it was rescinding the parties' transaction. *Id.* Defendant Sanders, on behalf of Washington Capital, gave Covey Run three options: (a) that the parties' agreement be cancelled and the equity funds of $1.2 million be returned to Covey Run; (b) that the funds be left in the escrow account while Sanders searched for another title company to close the deal; or (c) that the equity funds be returned to Covey Run while Sanders located another title company. *Id*. ¶ 29. Covey Run chose option (c). *Id*. ¶ 30. Pursuant to this option, upon return of the equity funds, Covey Run would put the funds into a trust account at Bremer Bank in St. Cloud, Minnesota, and Washington Capital would put it contribution of $660,000—which had still not been paid— into escrow, so that all of the equity funds would be available for closing. *Id*. Eventually, after the equity funds were not returned to Covey Run after numerous promises and delays, Covey Run demanded the return of the equity funds without any conditions. *Id.*

In the subsequent weeks, Washington Capital corresponded with Covey Run on a number of occasions (primarily through Defendant Sanders) to assure Covey Run that it would receive the money. *Id*. ¶ 31. In mid-January 2015, Covey Run asked Washington Capital to produce evidence that its bank account contained the money owed. *Id*. ¶ 33. On January 16, 2015, Defendant Sanders forwarded a letter to Covey Run, purportedly from Citibank, allegedly confirming that Washington Capital's bank account contained $1.8 million in funds. *Id*. The

letter was dated January 14, 2015 and signed by Steven Jackson, Vice President of Citigroup Private Wealth Banking.  *Id.*; *see also* Jackson Letter (Ex. 8 to Pl.'s Complaint, ECF No. [1-10]). The letter, however, appears to have been a forgery, as the Citibank logo and letterhead were apparently cut and pasted to make it appear as though the letter was authentic.  Pl.'s Compl. ¶ 34. Covey Run has also confirmed with Citibank that there are no Vice Presidents within the company named Steve Jackson, and that the letter did not appear to come from Citibank.  *Id.* Thereafter, Covey Run demanded that Washington Capital return the funds to Covey Run by January 20, 2015.  *Id.* ¶ 35.  After Washington Capital failed to do so, Covey Run served Washington Capital with a formal demand letter dated January 21, 2015, seeking the immediate return of the funds.  *Id.*  As of the date of the filing of Plaintiff's Complaint, Washington Capital had not returned any of the funds.  *Id.*

On January 21, 2015, Covey Run wrote to Defendant Loomar, asking about the status of the $1.2 million that had been deposited into escrow.  *Id.* ¶ 36.  Loomar responded that he did not have any of Covey Run's money in escrow and produced ledger reports showing that he had transferred the money to Defendant Lyles back in July 2014 and August 2014.  *Id.* ¶ 37; *see also* Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12], at 4).

On November 13, 2015, Plaintiff filed the instant Complaint, alleging five claims:  (1) Breach of Contract against Washington Capital; (2) Fraud against the Washington Defendants; (3)  Negligent Misrepresentation against Defendant Blackwell; (4) Conversion against the Washington Defendants; and (5) Breach of Fiduciary Duty against the Loomar Defendants.  *See* Pl.'s Compl. ¶¶ 46-81.  This action is the second action brought by Plaintiff concerning the events at issue.  Plaintiff's first action, which commenced on February 12, 2015, was dismissed without prejudice on November 11, 2015— two days prior to the filing of the instant Complaint.

*See Covey Run v. Washington Capital*, Civil Action No. 1:15--00219, Order, ECF No. [1]

(D.D.C. Nov. 11, 2015).  The Court dismissed Plaintiff's first action due to lack of subject matter

jurisdiction.  *See id.*  The Court observes—and no party disputes—that the instant Complaint is

free from the jurisdictional deficiencies that were present in the complaint filed by Plaintiff in its

first action.

The Court also notes that on November 12, 2015—the day after this Court dismissed

Plaintiff's first case and the day before Plaintiff filed the instant case—Defendants L. Gregory

Loomar, P.A. and Michael Blackwell, and a third party, Karen Baas, filed a state-court action in

Florida against Covey Run, Washington Capital, Jemel Lyles, and Steve Evans, alleging claims

of breach of contract, indemnification, and fraud in connection with the events at issue in this

matter.  *See Loomar v. Washington Capital*, CACE15020154 (Fla. Broward County Ct., Nov. 12,

2015).[4]

In this case, on December 30, 2015, the Washington Defendants filed their Answer and

Counter-Complaint against Covey Run.  *See* Answer and Counter-Complaint, ECF No. [17].  On

January 14, 2015, the Loomar Defendants filed their Amended Joint Motion to Dismiss, which is

presently before the Court.[5]  *See* Mot. to Dismiss, ECF No. [19].  The Loomar Defendants assert

four grounds as to why Plaintiff's Complaint should be dismissed:  (1) this Court lacks personal

---

[4] On July 6, 2016, the presiding judge in the state court action held a hearing, at which that court
denied a motion to dismiss filed by Covey Run.  *See* Order, *Loomar v. Washington Capital*,
CACE15020154 (Fla. Broward County Ct., July 6, 2016).  Pursuant to that court's order, Covey
Run has until August 5, 2016 to file its answer or to otherwise plead in the state-court action.
*See id.*

[5] The Loomar Defendants' First Joint Motion to Dismiss was denied without prejudice because
that motion repeatedly addressed allegations made in the earlier action between these parties,
15cv219, instead of the allegations raised in the instant Complaint filed in this lawsuit.  *See*
Minute Order (Dec. 17, 2015).

jurisdiction over the Loomar Defendants; (2) venue is improper under 28 U.S.C. § 1391(b); (3) this Court should abstain from exercising jurisdiction under the *Colorado River* Doctrine; (4) the Complaint fails to state a claim against the Loomar Defendants under Fed. R. Civ. P. 12(b)(6). *See* Loomar Defs.' Mem. in Support of Mot. to Dismiss, ECF No. [19-1], at 6-21.  The motion is now fully briefed and ripe for resolution.

## II. LEGAL STANDARD

### A.  Personal Jurisdiction under Rule 12(b)(2)

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990).  At this stage, the plaintiff "can satisfy that burden with a *prima facie* showing." *Mwani v. bin Laden,* 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Edmond v. U.S. Postal Serv. Gen. Counsel,* 949 F.2d 415, 424 (D.C. Cir. 1991)).  To do so, the plaintiff cannot rest on bare allegations or conclusory statements but "must allege specific acts connecting [the] defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation marks omitted).  "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the plaintiff may "rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise obtain.' " *Urban Inst. v. FINCON Servs.,* 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani,* 417 F.3d at 7).

### B.  Improper Venue under Rule 12(b)(3)

When presented with a motion to dismiss for improper venue under Rule 12(b)(3), the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual

conflicts in the plaintiff's favor." *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 11

(D.D.C.2009). "Because it is the plaintiff's obligation to institute the action in a permissible

forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v.

Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). In order "[t]o prevail on a motion to dismiss for

improper venue, the defendant must present facts that will defeat the plaintiff's assertion of

venue." *Khalil v. L–3 Commc'ns Titan Grp.*, 656 F. Supp. 2d 134, 135 (D.D.C.2009) (internal

citation omitted). Unless there are "pertinent factual disputes to resolve, a challenge to venue

presents a pure question of law." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C.

2011).

## C.  *Colorado River* Abstention

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction

given to them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817

(1976). For this reason, "[g]enerally, as between state and federal courts, the rule is that 'the

pendency of an action in the state court is no bar to proceedings concerning the same matter in

the Federal court having jurisdiction.' " *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282

(1910). The Supreme Court, however, has recognized that in "exceptional" circumstances,

"considerations of wise judicial administration, giving regard to conservation of judicial

resources and comprehensive disposition of litigation" may permit the dismissal or stay of "a

federal suit due to the presence of a concurrent state proceeding." *Id.* at 817–18  (internal

quotation marks omitted). The Supreme Court emphasized that such circumstances are

considerably limited and afford only a very narrow exception to the general rule that ongoing

state litigation is not a bar to federal court proceedings on the same matter. *See id.*

**D. Failure to State a Claim under Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

The Loomar Defendants assert four grounds as to why Plaintiff's Complaint should be dismissed: (1) this Court lacks personal jurisdiction over the Loomar Defendants; (2) venue is improper under 28 U.S.C. § 1391(b); (3) this Court should abstain from exercising jurisdiction under the *Colorado River* Doctrine; (4) the Complaint fails to state a claim against the Loomar Defendants under Fed. R. Civ. P. 12(b)(6). *See* Loomar Defs.' Mem. in Support of Mot. to Dismiss, ECF No. [19-1], at 6-21. The Court shall address each argument in turn.

**A. This Court has personal jurisdiction over the claims brought against both L. Gregory Loomar and the Law Offices of L. Gregory Loomar, P.A.**

Defendants L. Gregory Loomar ("Loomar"), a Florida resident, and the Law Offices of L. Gregory Loomar, P.A. ("Loomar, P.A."), a Florida-based professional organization whose sole officer is Defendant Loomar, contend that this Court lacks *in personam* jurisdiction over them. *See* Loomar Defs.' Mem. in Support of Mot. to Dismiss, ECF No. [19-1], at 6-9. The Loomar Defendants jointly contend that the events at issue in this matter "ha[ve] no discernable

connection to Washington, D.C." *Id.* at 9.  The Loomar Defendants further contend that the

alleged tortious conduct—the breach of fiduciary duty—occurred, if at all, in Florida, where

Loomar, P.A. operates as an Escrow Agent.  *Id.*

      Plaintiff, in response, argues that this Court may exercise personal jurisdiction over the

Loomar Defendants because they have "transacted business in the District of Columbia by

agreeing to act as [an] escrow agent pursuant to a contract entered into in this District, and by

agreeing to provide notice to Washington Capital in this District pursuant to that Agreement, and

have caused tortious injury by an act or omission in this District in breaching the fiduciary duties

of an escrow agent by acting contrary to the instructions in that Agreement."  Pl.'s Opp'n, ECF

No. [24], at 8 (internal citations omitted).

      Upon review of the parties' submissions and the current record, the Court finds that it has

personal jurisdiction over both Loomar Defendants due to the substantial "affiliation between the

[District of Columbia] and the underlying controversy."  *Goodyear Dunlop Tires Operations,*

*S.A. v. Brown*, 564 U.S. 915, 919 (2011).  At the outset, there are a number of facts in the record

indicating that the Loomar Defendants "purposefully availed [themselves] of the privilege of

conducting activities within the [District of Columbia], thus invoking the benefits and

protections of its laws."  *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013)

(quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  First, the contractual documents at

issue expressly state that one of the parties to the deal, Washington Capital, operated out of the

District of Columbia, and that Loomar, P.A., as the Escrow Agent for the deal, was responsible

for communicating with Washington Capital, and receiving funds from, and distributing funds to,

Washington Capital, throughout the term of the project.  *See* LOC (Ex. 2 to Pl.'s Complaint, ECF

No. [1-4]), Addendum (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2]).

Furthermore, the allegations at the center of Plaintiff's claim against the Loomar Defendants

concern wire transfers allegedly made by Loomar, on behalf of Loomar, P.A., from the firm's

bank account to the bank account of Washington Capital, an entity, which, according to the

Loomar Defendants' own ledgers, was located at 2001 12th Street NW, Suite 409, Washington,

D.C. 20009.  *See* Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12], at 4).  It is

also undisputed that Loomar confirmed in a signed receipt that he had received the wire transfers

for the equity money, and represented that he sent a copy of the receipt on behalf of Loomar, P.A.

to Washington Capital, located at 1050 Connecticut Ave., NW, 10th Floor, Washington, D.C.

Compl. ¶ 23; *see also* Equity Money Receipt (Ex. 3 to Pl.'s Complaint, ECF No. [1-5]).  The

record evidence also demonstrates that Loomar, P.A., profited out of this business arrangement,

retaining fees in the amount of $2,905.00 and $875.00.  *See* Escrow Communication (Ex. 10 to

Pl.'s Complaint, ECF No. [1-12], at 4-5).  These facts together are sufficient to conclude that

Plaintiff has established a *prima facie* case that the Loomar Defendants voluntarily and

deliberately "transacted business" in the District of Columbia under Section 13-423(a)(1) of the

District of Columbia's Long-Arm Statute.  *See* D.C. Code Ann. § 13-423 (West); *see also*

*Thompson Hine, LLP*, 734 F.3d at 1193 (citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223

(1957), which held that a forum State has personal jurisdiction over a non-resident entity where

the suit is "based on a contract which had substantial connection with that State").[6]

---

[6]  In their Reply brief, the Loomar Defendants attempt to argue that the contractual activities in
this case are insufficiently connected to the District of Columbia to bind the Loomar Defendants
to this forum.  *See* Loomar Defs.' Reply, ECF No. [27], at 4-7.  However, each of the cases cited
by the Loomar Defendants undermine their position, and instead, support the conclusion that the
Loomar Defendants purposefully "transacted business" in the District of Columbia.  For
example, in *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004), the D.C. Circuit found
that a contract for repayment of credit card charges had a substantial connection with the District
of Columbia, where (1) the cards were issued to a resident in the District of Columbia; (2) the

Defendant Loomar also contends in his Reply brief that even if the Court has personal jurisdiction over Loomar, P.A., the Court lacks personal jurisdiction over Loomar, individually, because it was the law firm, not Loomar individually, that was appointed to serve as the Escrow Agent for the funds in dispute. *See* Loomar Defs.' Reply, ECF No. [27], at 8. As a preliminary matter, Defendant Loomar improperly raises this argument for the first time in his Reply brief, and therefore, the Court need not consider it. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008). Even if Defendant Loomar had properly raised this argument, it would still be unavailing. Defendant Loomar attempts to rely on the general proposition that actions committed within the scope of an officer's employment cannot be imputed to individual defendants to establish personal jurisdiction over them. *See* Loomar Defs.' Reply, ECF No. [27], at 8 (citing *Richard v. Bell Atlantic Corp.*, 976 F. Supp. 40 (D.D.C. 1997)). However, that proposition is inapplicable in this case, as Plaintiff's Complaint alleges that Loomar acted negligently, and without authorization, by disbursing the escrow funds to Washington Capital, and that he therefore would be liable in his individual capacity under Florida statutory law. *See* Compl. ¶ 78; Pl.'s Opp'n, ECF No. [24], at 9 (citing Fla. Stat. Ann. § 621.07 (West) (an officer

---

monthly billing statements were sent to the resident's address in the District of Columbia; and (3) the parties contemplated repeated contacts with the District of Columbia as a condition of performance. *See id.* at 205-06. Likewise, here, Plaintiff alleges that the Loomar Defendants repeatedly communicated with, and sent payments to, representatives of Washington Capital, under the belief that Washington Capital was registered in the District of Columbia and maintained an office in the District. Furthermore, the contract expressly contemplated that the law firm would repeatedly have contacts with Washington Capital—and thereby the District of Columbia—as a condition of its performance as the appointed Escrow Agent for the deal. *See* LOC (Ex. 2 to Pl.'s Complaint, ECF No. [1-4]), Addendum (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2]). The Court also notes that the remaining cases cited by the Loomar Defendants are inapposite to the facts alleged in this case. *See, e.g., Hanson v. Denckla*, 357 U.S. 235 (1958) (holding that forum state had no personal jurisdiction over out-of-state trustee where the record evidence disclosed no solicitation of business by the trustee in the forum state, agreement had no connection to the forum state, and the trustee's *sole* interaction with the forum state consisted of remitting trust income to a resident in the forum state).

of a professional organization may be liable for "negligent or wrongful acts or misconduct committed by that person")).  Furthermore, Plaintiff alleges, and Defendants do not dispute, that Loomar P.A. is a professional organization whose sole officer is Loomar.  *See* Compl. ¶ 7. According to the Complaint and the exhibits submitted by the parties, Loomar personally communicated with Washington Capital and personally made the decision to initiate the wire transfers—the precise actions that underlie Plaintiff's claims against Defendant Loomar.  *See* Compl. ¶¶ 7, 36-41; *see also* Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12], at 4).  These facts "logically lead[] to the inference that he had a share in the [alleged] wrongful acts . . . [that] constitute the offense," and that the Court can therefore exercise personal jurisdiction over Loomar individually.  *Nat'l Cmty. Reinvestment Coal. v. NovaStar Fin., Inc.*, 631 F. Supp. 2d 1, 8 (D.D.C. 2009) (quoting *Vuitch v. Furr*, 482 A.2d 811, 821 (D.C. 1984)).

**B.  The District of Columbia is a proper venue for Plaintiff's claim against the Loomar Defendants.**

The Loomar Defendants also assert that the District of Columbia is an improper venue for Plaintiff's claim against the Loomar Defendants.  *See* Loomar Defs.' Mem. in Support of Mot. to Dismiss, ECF No. [19-1], at 21.  The Loomar Defendants' Motion to Dismiss contains a cursory argument that Plaintiff's Complaint fails to plead sufficient allegations to conclude that venue is proper in this case with respect to Plaintiff's claim against the Loomar Defendants.  *Id.*  The Court finds the Loomar Defendants' argument unavailing.

The federal venue statute, 28 U.S.C. § 1391(b), provides, in relevant part, that a claim may be brought in any district where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b).  Because venue is intended to protect defendants, "courts often focus on the relevant activities of the defendant . . . in determining where a substantial part of the underlying events occurred."  *Abramoff v. Shake Consulting, L.L.C.*, 288 F.

16

Supp. 2d 1, 4 (D.D.C .2003).  In this Circuit, the measure of the contacts giving rise to where the claim arose is "ascertained by advertence to events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records." *Sharp Elec. Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228, 1229 (D.C. Cir. 1981) (citing *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978)).  The District of Columbia need not have the "most significant connection to the claim at issue," as venue may be proper in more than one district.  *Weinberger v. Tucker*, 391 F. Supp. 2d 241, 244 (D.D.C. 2005).  In ruling upon a motion to dismiss for lack of proper venue, the Court "accepts the plaintiffs['] well-pled factual allegations regarding venue as true, . . . draws all reasonable inferences from those allegations in the plaintiffs['] favor, and . . . resolves any factual conflicts in the plaintiffs['] favor."  *James v. Booz–Allen, Hamilton, Inc.*, 227 F. Supp. 2d 16, 20 (D.D.C.2002) (citation omitted).

Here, Plaintiff's breach of fiduciary duty claim against the Loomar Defendants is based on acts allegedly performed by the Loomar Defendants while serving as the Escrow Agent for a contract that Plaintiff and Washington Capital allegedly entered into in the District of Columbia.[7] *See* Compl. ¶¶ 10, 73-81.  The two contractual documents at issue—the Letter of Commitment and Addendum A—expressly state that Washington Capital operated out of the District of Columbia, and that Loomar, P.A. would be responsible for communicating with Washington Capital, and receiving funds from, and distributing funds to, Washington Capital, throughout the term of the project.  *See* LOC (Ex. 2 to Pl.'s Complaint, ECF No. [1-4]), Addendum (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2]).  Moreover, the allegations at the heart of

---

[7] The Court also notes that the Washington Defendants—Washington Capital and its officers, Lyles, Sanders, and Evans—admit in their Answer that the parties entered into the contract at issue in the District of Columbia, and that the Washington Defendants communicated in the District of Columbia with the other parties in this case regarding the transactions at issue.  *See* Answer and Counter-Complaint, ECF No. [17], at ¶¶ 9-11.

Plaintiff's claims against the Loomar Defendants concern wire transfers allegedly made by Loomar, on behalf of Loomar, P.A., from the firm's bank account to the bank account of Washington Capital, an entity, which, according to the Loomar Defendants' own ledgers, was located at 2001 12th Street NW, Suite 409, Washington, D.C. 20009. *See* Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12], at 4).  It is also undisputed that Loomar confirmed in a signed receipt that he received the wire transfers for the equity money, and represented that he sent a copy of the receipt on behalf of Loomar, P.A. to Washington Capital, located at 1050 Connecticut Ave., NW, 10th Floor, Washington, D.C. *Id.* ¶ 23; *see also* Equity Money Receipt (Ex. 3 to Pl.'s Complaint, ECF No. [1-5]).

In light of the foregoing, the Court finds that Plaintiff has pled facts sufficient to show that a "substantial part of the events . . . giving rise to [Plaintiffs'] claim" against the Loomar Defendants occurred in the District of Columbia.[8]  28 U.S.C. § 1391(b); *see also Bank of New York v. F.D.I.C.*, 508 F.3d 1, 7 (D.C. Cir. 2007) (holding venue to be proper in District of Columbia where the decision-making regarding to the contractual instrument underlying the plaintiff's claim occurred in the District of Columbia).  Therefore, the District of Columbia is a proper venue for Plaintiff's breach of fiduciary duty claim against the Loomar Defendants.[9]

---

[8] The Court acknowledges that Loomar allegedly initiated the wire transfer in Florida and that venue would appear to also be proper in Florida.  This fact does not alter the Court's analysis as to the issue before this Court:  whether venue is proper in the District of Columbia.  It is hornbook law that venue may be proper in more than one district, and that a claim may be brought in *any district* where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b); *see also e.g.*, *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 28-29 (D.D.C. 2013) (citing cases).

[9]  Even if the District of Columbia was found not to be a proper venue for Plaintiff's claim against the Loomar Defendants, it appears that the Court could still, in an exercise of its discretion, hear Plaintiff's claim against the Loomar Defendants under the doctrine of pendant venue.  *See Beattie v. United States*, 756 F.2d 91, 100-03 (D.C. Cir. 1984) *abrogated on other*

**C.  This case does not present the "exceptional circumstances" that would warrant abstention under *Colorado River*.**

The Loomar Defendants also contend that the Court should abstain from exercising its jurisdiction over this case in deference to a parallel proceeding in Florida state court filed by Loomar, P.A.  *See* Loomar Defs.' Mem. in Support of Mot. to Dismiss, ECF No. [19-1], at 19-21.  The Loomar Defendants argue that this Court should abstain from exercising its jurisdiction over this case because the action in Florida state court involves "the same parties as are named herein, arises out of the transactions and occurrences that animate this action, and involves claims that implicate identical issues as are before this Court." *Id.* at 20.

According to the Supreme Court, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  For this reason, "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.' " *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910).  The Supreme Court, however, has recognized that in "exceptional" circumstances, "considerations of wise judicial administration, giving regard to

---

*grounds by Smith v. United States*, 507 U.S. 197 (1993).  Under this doctrine, federal courts may exercise their discretion to hear claims as to which venue is lacking if those claims arise out of a "common nucleus of operative fact" with claims as to which venue is proper. *Id.* at 102.  In determining whether to exercise such discretion, federal courts consider factors that bear upon judicial economy, convenience, and fairness. *Id.* at 103.  Here, venue is proper over Plaintiff's claims against the Washington Defendants (Counts I, II, and IV).  The Washington Defendants concede that they entered into the contract at issue in the District of Columbia, and that they allegedly communicated in this district in connection with the transactions at issue. *See* Answer and Counter-Complaint, ECF No. [17], at ¶¶ 9-11.  Moreover, Plaintiff's breach of fiduciary claim against the Loomar Defendants arises out of a "common nucleus of operative facts" with Plaintiff's claims against the Washington Defendants. *See Beattie*, 756 F.2d at 102.  Accordingly, it appears that Plaintiff's claim against the Loomar Defendants could alternatively be heard by this Court under the doctrine of pendent venue. *See id.* at 100-03.

conservation of judicial resources and comprehensive disposition of litigation" may permit the dismissal or stay of "a federal suit due to the presence of a concurrent state proceeding." *Id.* at 817–18 (internal quotation marks omitted). The Supreme Court emphasized that such circumstances are considerably limited and afford only a very narrow exception to the general rule that ongoing state litigation is not a bar to federal court proceedings on the same matter. *See id.*

The Supreme Court has identified several factors that inform a district court's discretionary decision whether to abstain from exercising its jurisdiction for reasons of wise judicial administration. As are relevant here, these considerations include (1) the inconvenience of the federal forum, (2) the desirability of avoiding piecemeal litigation, and (3) the order in which jurisdiction was obtained by and the progress of the litigation in the concurrent jurisdictions.[10] *Id.* at 818. In addition, courts should consider whether (4) the case involves federal or state law and (5) the inadequacy of the concurrent proceedings to protect the litigants' rights. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23–26 (1983); *see also Sheehan v. Koonz*, 102 F. Supp. 2d 1, 3 (D.D.C. 1999) (listing factors for consideration); *Johnston Lemon & Co., Inc. v. Smith*, 882 F. Supp. 4, 4 (D.D.C. 1995) (same). "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16.

The Supreme Court has counseled that "the decision whether to dismiss [or stay] a federal action because of parallel state-court litigation does not rest on a mechanical checklist,

---

[10] The Supreme Court in *Colorado River* also indicated that in cases involving *in rem* jurisdiction, courts should consider which court first assumed jurisdiction over the property at issue. *Colorado River*, 424 U.S. at 818. As this case does not involve *in rem* jurisdiction, this factor is irrelevant to the Court's inquiry.

but on a careful balancing of the important factors as they apply in a given case, with the balance

heavily weighted in favor of the exercise of jurisdiction." *Id.*  The Court's task "is not to find

some substantial reason for the exercise of federal jurisdiction . . .; rather, the task is to ascertain

whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice

under Colorado River to justify the surrender of that jurisdiction." *Id.* at 25–26.

Upon consideration of the factors in this case and cognizant of the Court's "unflagging

obligation" to exercise its jurisdiction absent extraordinary circumstances, the Court finds in its

discretion that abstention is not warranted.  As a preliminary matter, the action pending in

Florida state court has seen little activity since the filing of the complaint in that action on

November 12, 2015—only one day before Plaintiff's Complaint was filed in this action and one

day after Plaintiff's previously filed action was dismissed without prejudice.  In fact, summons

were not issued to the defendants in the state court action until March 10, 2016—well after the

defendants in this case had been served, and well after the instant motion in this matter was fully

briefed.  *See Loomar v. Washington Capital*, CACE15020154 (Fla. Broward County Ct., Nov.

12, 2015).  Moreover, Covey Run, the defendant in that proceeding, has yet to file an answer or

to otherwise plead.  *See id.*

Furthermore, the Loomar Defendants have made no showing as to why this forum is an

inconvenient forum to them, or to any of the other parties in this case.  In fact, four other

Defendants—Washington Capital, Lyles, Sanders, and Evans—have agreed to litigate Plaintiff's

claims in this forum, and have brought their own counterclaims against Plaintiff.  *See* Answer

and Counter-Complaint, ECF No. [17].  To the extent that the Loomar Defendants are requesting

that this Court abstain from assuming jurisdiction over only Plaintiff's claim against the Loomar

Defendants, doing so would simply result in an unnecessary bifurcation of claims and additional

piecemeal litigation.  Finally, the Loomar Defendants have made no argument that their rights

would be inadequately protected due to the existence of concurrent proceedings.  *See Colorado*

*River*, 424 U.S. at 817.

Accordingly, the Court finds in its discretion that abstention is not warranted in this case.

### D.  Plaintiff's Complaint states a breach of fiduciary duty claim against both L. Gregory Loomar and the Law Offices of L. Gregory Loomar, P.A.

Finally, the Loomar Defendants contend that Plaintiff's Complaint fails to state a claim

against Defendant L. Gregory Loomar ("Loomar") individually and against his law firm, the

Law Offices of L. Gregory Loomar, P.A ("Loomar, P.A.").  *See* Loomar Defs.' Mem. in Support

of Mot. to Dismiss, ECF No. [19-1], at 11-19.

First, Defendant Loomar argues that the Complaint fails to state a claim against him

individually because the Letter of Commitment states that the parties appointed the Law Offices

of L. Gregory Loomar, P.A. ("Loomar, P.A.") to serve as the escrow agent.  *Id.* at 12.  Defendant

Loomar contends that he, as an individual, never assumed the role of escrow agent, and therefore

cannot be liable, either as an escrow agent under the contract—or as a professional under

Florida's statutory law governing professional associations.  *See id.* at 12-13.

As a preliminary matter, it is undisputed that Defendant Loomar, as an individual, was

never appointed by the parties as the escrow agent for the transaction at issue.  The only Escrow

Agent appointed by the parties was Loomar, P.A.  *See* LOC § 2.4 (Ex. 2 to Pl.'s Complaint, ECF

No. [1-4], at 7).  Therefore, Defendant Loomar, as an individual, could not have assumed any

fiduciary duties by virtue of having served as the Escrow Agent for the transaction at issue.  *See*

*Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1375 (S.D. Fla. 2011)

("It is well-settled that one who undertakes to act as an escrow holder assumes fiduciary duties as

a matter of law.").

The issue disputed by the parties—which is slightly more refined—is whether Defendant

Loomar, as an individual, could have assumed any fiduciary duties *by virtue of having provided*

*professional services as an officer of Loomar, P.A.*—the professional organization that served as

the escrow agent for the transaction at issue.  As to this issue, the Court finds that it is plausible

that Defendant Loomar assumed a statutory duty as a professional who rendered services to

Plaintiff during the course of Loomar, P.A.'s appointment as the Escrow Agent for the

transaction at issue.

Under Fla. Stat. Ann. § 621.07, the corporate form of a professional services organization

"does not automatically shield the attorneys from individual liability," and an attorney can be

held personally liable for negligent or wrongful acts that he committed while providing

professional services on behalf of the company to the person for whom such professional

services were being rendered.  *See* Fla. Stat. Ann. § 621.07 (West) ("[A]n officer of a

[professional organization] shall be personally liable for negligent or wrongful acts of

misconduct committed by that person. . ."); *see also O'Keefe v. Darnell*, 192 F. Supp. 2d 1351,

1360 (M.D. Fl. 2002) (same).  Furthermore, when interpreting Fla. Stat. Ann. § 621.07, the

Supreme Court of Florida has found that the provision "expressly recognizes the common law

duty of a professional."  *Moransais v. Heathman*, 744 So. 2d 973, 978 (Fla. 1999); *see also id.* at

978-79 ("[S]ection 621.07 make[s] clear that professionals shall be individually liable for any

negligence committed while rendering professional services.").

Moreover, the cases cited by Defendant Loomar in support of his argument that he cannot

be held liable individually under Florida statutory law are clearly inapposite to the case at bar.

For example, in *Del Valle v. Sanchez*, 170 F. Supp. 2d 1254 (S.D. Fla. 2001), the plaintiff was

suing three physicians under federal tort law and government contract law, arguing that they

were individually liable for work performed as employees of a professional association that had

contracted with a local health center. *Id.* at 1270-71. In holding that the physicians were not

individually liable as "contractors," the Court expressly distinguished the situation from the

scenario where a physician had been found to have been liable in his individual capacity where

the physician was *the sole shareholder and employee of the corporation* that had entered into the

contract at issue. *See id.* Defendant Loomar cites another case—*Gershuny v. Martin McFall*

*Messenger Anethesia Prof'l Ass'n*, 539 So. 2d 1131, 1133 (Fla. 1989)—for the proposition that

the actions of the professional association are not imputable to its members absent exceptional

circumstances, such as fraud or some illegal purpose. *See* Loomar Defs.' Mem. in Support of

Mot. to Dismiss, ECF No. [19-1], at 6-21. However, Loomar misconstrues the fundamental

holding of *Gershuny*. In *Gershuny*, the court held that a group of physicians comprising a

professional association *could be held personally liable* in their capacity as physicians if

negligent or wrongful acts were *committed by them* or by someone under their direction

supervision. 539 So. 2d at 1132. The limitations on personal liability cited by Loomar applied

only where the acts were committed by *persons other than the defendant*, or by *persons outside*

*of the defendant's control*. *See id.* at 1132-33. The holding in *Gershuny* is consistent with the

statutory duty imposed on professionals under Fla. Stat. Ann. § 621.07.

Accordingly, the Court concludes that Plaintiff has adequately pled, for the purposes of

the instant motion to dismiss, that both Loomar Defendants owed a fiduciary duty of care to

Plaintiff during the course of Loomar, P.A.'s appointment as the Escrow Agent for the

transaction at issue.[11]

---

[11] In reviewing the relevant authorities regarding Fla. Stat. Ann. § 621.07, it would appear to the
Court that the claim brought by Plaintiff against Defendant Loomar individually under Stat. Ann.

Next, the Loomar Defendants argue that even if both Loomar Defendants owed a fiduciary duty of care to Plaintiff, it is not plausible that the Loomar Defendants breached that duty because the Letter of Commitment and its Addendum limited the scope of the duty owed by the Loomar Defendants.  *See* Loomar Defs.' Mem. in Support of Mot. to Dismiss, ECF No. [19-1], at 14-15.  The Loomar Defendants rely on the fact that the Agreement expressly disclaims any "duty to know or inquire as to the performance or nonperformance of any provision of the Letter of Commitment or any other document between [Washington Capital and Covey Run]." Addendum § 14.7 (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2], at 6).  The Loomar Defendants also contend that the Agreement fully indemnifies the Loomar Defendants against any liabilities arising from actions taken by the Loomar Defendants in accordance with the direction or consent of Washington Capital.  *See* Addendum §§ 14.7, 14.9, 14.11, 14.12 (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2], at 6, 7, 8).

The Loomar Defendants are correct that under Florida common law, parties may limit an escrow agent's fiduciary duty through contract.  *See LLC v. Metro-Dade Title Co.*, 109 So.3d 1192, 1194 (2013).  However, in this case, it is plausible that the Loomar Defendants did not meet the fiduciary duties—even when taking into account contractual limitations—that were required of the Escrow Agent when disbursing the escrow funds.  Specifically, Section 14.1.C of

---

§ 621.07 might properly be construed as a *professional negligence* claim, as opposed to, or in addition to, a *breach of fiduciary duty* claim.  *See, e.g., Moransais*, 744 So. 2d at 979 (describing Section 621.07 as providing a statutory "cause of action for professional negligence"); *see also Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A.*, 32 So. 3d 111, 116 (Fla. Dist. Ct. App. 2009) (explaining slight differences between the two types of claims).  Neither party raised this issue in briefing.  Instead, Defendant Loomar argued that he could not be held liable on the merits under Fla. Stat. Ann. § 621.07 on the grounds that he could not have assumed any statutory duties pursuant to that provision.  As explained above, Defendant Loomar's argument on this point is erroneous.  In light of the foregoing, the Court shall permit Plaintiff, if it elects, to amend its complaint to more clearly set out which claim(s)—professional negligence and/or breach of fiduciary duty—it seeks to bring against Defendant Loomar as an individual.

the Addendum required the Escrow Agent to "receive and distribute" the $1.2 million in funds

deposited by Covey Run "in accordance with Section 2.2" of the Letter of Commitment.

Addendum § 14.1.C (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2], at 3).

Moreover, Section 2.2 required that the escrow funds that were deposited by Covey Run to be

"*used first for the payments of the project['s] costs.*" *See* LOC § 2.2 (Ex. 2 to Pl.'s Complaint,

ECF No. [1-4], at 6) (emphasis added).  In addition, Section 14.3 required the Escrow Agent to

"distribute funds *strictly* in accordance with the terms and conditions of the Letter of

Commitment," including those set out in Section 2.2.  Addendum § 14.3.A.b (Ex. 1 to Loomar

Defs.' Motion to Dismiss, ECF No. [19-2], at 4) (emphasis in original).

Upon reviewing the Agreement as a whole, it appears to the Court that the contractual

provisions at issue present an ambiguity as to whether the Loomar Defendants had a fiduciary

duty to determine, before disbursing the funds deposited by Covey Run, whether the funds would

be used "for the payments of the project."  Such an ambiguity cannot be resolved at the motion

to dismiss stage.  *See Quiller v. Barclays Am./Credit, Inc.*, 764 F.2d 1400, 1400 (11th Cir. 1985)

("Being ambiguous, the contract cannot be held invalid on a motion to dismiss.").

Furthermore, if such a duty existed, it is plausible that the Loomar Defendants failed to

meet that duty.  The documents attached to the Complaint appear to contain allegations that

Loomar made the decision to transfer the escrow funds after receiving an email from Defendant

Lyles, which stated simply, "Greg please send the $1,200,000.00, less your fee to [Washington

Capital's bank account]."  Escrow Communication (Ex. 10 to Pl.'s Complaint, ECF No. [1-12],

at 10).  Absent further discovery, it is plausible that the Loomar Defendants failed to determine,

before disbursing the funds deposited by Covey Run, whether the funds would be used "for the

payments of the project."  Therefore, it is plausible that the Loomar Defendants breached a duty

to disburse the funds in accordance with agreed-upon terms of the agreement.  *See, e.g.*, *Oginsky v. Paragon Properties of Costa Rica LLC,* 784 F. Supp. 2d 1353, 1376 (S.D. Fla. 2011) ("Handling of escrowed funds in a manner contrary to the escrow agreement is a breach of an escrow holder's fiduciary duties."); *Williams v. Hunt Bros. Const.*, 475 So. 2d 738, 741 (Fla. Dist. Ct. App. 1985) (holding that attorney breached fiduciary duty by releasing funds entrusted to him before conditions required for release had been met).

The Court also finds unavailing the Loomar Defendants' argument that Plaintiff fails to state a claim on the grounds that the Agreement fully indemnifies the Loomar Defendants against any liabilities arising from actions taken by them in accordance with the direction or consent of Washington Capital.  *See* Addendum §§ 14.7, 14.9, 14.11, 14.12 (Ex. 1 to Loomar Defs.' Motion to Dismiss, ECF No. [19-2], at 6, 7, 8).  In effect, the Loomar Defendants argue that because Addendum A relieves them of liability for taking action pursuant to Washington Capital's instruction, they are free to ignore the terms of the agreement itself.  However, as discussed above, the Loomar Defendants' interpretation, at best, suggests that there is an ambiguity in the agreement that cannot be resolved at the motion to dismiss stage.  *See Quiller*, 764 F.2d at 1400.

Finally, the Court finds unavailing the Loomar Defendants' argument that the Complaint lacks specificity under Federal Rule of Civil Procedure 8.  *See* Loomar Defs.' Mem. in Support of Mot. to Dismiss, ECF No. [19-1], at 15-17.  As discussed in Part III.A., *supra*, Plaintiff's Complaint clearly alleges conduct taken by Loomar individually, and Plaintiff has put forward a legal basis as to why Loomar, P.A. can be held liable for the conduct as the named escrow agent, and why Loomar can be held liable as the attorney responsible for his own negligent or wrongful actions.  The Complaint provides both parties with sufficient notice of the claims against them, as well as the specific conduct upon which it rests, as required pursuant to Rule 8(a).  Moreover,

in the case cited by the Loomar Defendants, *Oginsky*, the court dismissed the plaintiff's breach of fiduciary duty claim pursuant to Rule 8 because the complaint referred to three Defendants collectively, and it was unclear which of the three Defendants the plaintiff was alleging to be liable.  *See Oginsky*, 784 F. Supp. 2d at 1377.

Accordingly, the Court finds that Plaintiff's Complaint states a breach of fiduciary duty claim against both L. Gregory Loomar and the Law Offices of L. Gregory Loomar, P.A.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Loomar Defendants' [19] Amended Joint Motion to Dismiss.

An appropriate Order accompanies this Memorandum Opinion.


       /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge