**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| COVEY RUN, LLC,<br>  a Minnesota limited liability company,<br>      Winkelman Building Corp.<br>      340 South Highway 10<br>      Saint Cloud, Minnesota 56304,<br><br>              Plaintiff,<br><br>v.<br><br>WASHINGTON CAPITAL, LLC,<br>  a Virginia limited liability company,<br>      1100 N. Glebe Road, Suite 1010<br>      Arlington, Virginia 22201,<br><br>JEMEL M. LYLES,<br>      2806 Galeshead Drive<br>      Upper Marlboro, Maryland 20774,<br><br>MELVIN H. SANDERS,<br>      5501 Porsche Lane<br>      Austin, Texas 78749,<br><br>STEPHEN C. EVANS,<br>      112 Forrest Street<br>      Manassas Park, Virginia 20111,<br><br>L. GREGORY LOOMAR,<br>      8201 Peters Road, Suite 1000<br>      Plantation, Florida,<br><br>LAW OFFICES OF L. GREGORY LOOMAR, PA,<br>      8201 Peters Road, Suite 1000<br>      Plantation, Florida, and<br><br>MICHAEL BLACKWELL,<br>      3040 Oakshire Street<br>      Denton, Texas 76209,<br><br>              Defendants. | Case No. 1:15-CV-01997-CKK |

**Amended Complaint**

Plaintiff Covey Run, LLC files this action to recover damages arising from Defendants' breach of fiduciary duty, fraudulent activities, and misrepresentations that culminated in the theft of over $1.2 million of Plaintiff's money, which Plaintiff planned to use to develop assisted living housing for seniors in Sheridan, Wyoming.  Plaintiff seeks monetary, injunctive, and other relief against Defendants for the reasons set forth below.

**Parties**

1.	Plaintiff Covey Run, LLC is a Minnesota limited liability company with its principal place of business located in St. Cloud, Minnesota.  The members of Covey Run are: (1) Mathew J. and Shari K. Frisbie, both citizens of the State of Wisconsin; (2) Anders and Cheryl Nelson, both citizens of the State of Wisconsin; (3) Millicent and J. O Stender, both citizens of the State of Wyoming; (4) Christian and Kathryn Goralski, both citizens of the State of Minnesota; (5) Aaron John Netter and Leslie A. Bernick Netter, both citizens of the State of Minnesota; (6) Augustana Care, a citizen of the State of Minnesota; (7) the Rollis H. Anderson Revocable Trust;[1] (8) VASSS III, LLC;[2] and (9) CSH II, LLC.[3]  Covey Run was established to develop real property in order to provide assisted living housing for seniors in Sheridan, Wyoming.

---

[1] Rollis H. Anderson is the sole beneficiary and trustee of the Rollis H. Anderson Revocable Trust, and is a citizen of the State of Minnesota.

[2] The members of VASSS III, LLC are:  (1) the Duane B. Schultz 2009 Revocable Trust, whose sole beneficiary and trustee is Duane Schultz; (2) Andrew Auger; (3) Robbie Schultz; and (4) the Trust of Jay R. Vogel, whose sole beneficiary and trustee is Jay Vogel.  The foregoing individuals are all citizens of the State of Minnesota.

[3] The sole member of CSH II, LLC is Andrew Auger, a citizen of the State of Minnesota.

2.      According to the corporate records of the Commonwealth of Virginia, Defendant Washington Capital, LLC is a Virginia limited liability company with its principal place of business located in Arlington, Virginia. Washington Capital, through its representatives and agents, represented that its office addresses are 1010 Connecticut Avenue, 11th Floor, Washington, D.C. 20036; 1050 Connecticut Avenue, N.W., 10th Floor, Washington, D.C. 20036; and 1629 K Street, Suite 300, Washington, D.C. 20006. According to the records of the Commonwealth of Virginia, Defendant Jemel M. Lyles formed Washington Capital in March 2013 and represented to the Commonwealth that he is a member or manager of this entity. Upon information and belief, the sole members of Washington Capital are Defendants Lyles, Evans, and/or Sanders, none of whom shares a state of citizenship with Covey Run.

3.      Defendant Jemel M. Lyles (a/k/a J.M. Lyles, Sr.) is a natural person and, upon information and belief, is a citizen of the State of Maryland. Based on information and belief and according to the corporate records of the Commonwealth of Virginia, Lyles is a member or manager and Chief Executive Officer of Washington Capital.[4]

4.      Defendant Steve C. Evans (or Stephen C. Evans) is a natural person and, upon information and belief, is a citizen of the State of Ohio. Upon information and belief, Defendant Evans is a Vice President of Defendant Washington Capital.[5]

---

[4] Lyles was criminally indicted in April 2015 in a case pending before the United States District Court for the District of Maryland. Case No. 8:15-cr-00168-DKC. The criminal indictment at page 1 references Lyles's residency as Maryland. In addition, at page 9 of the indictment, there is a reference to Lyles' 2006 Land Rover with VIN No. SALMF15426A198061. Covey Run understands that this vehicle belongs to Lyles and the vehicle is registered with the Maryland Department of Motor Vehicles.

[5] Covey Run understands that Evans is living in Virginia. Evans was criminally indicted in in April 2015 in a case pending before the United States District Court for the District of Maryland. Case No. 8:15-cr-00168-DKC. The criminal indictment at page 1 references Evans' residency as Ohio or Maryland. Based on information and belief, Evans has an Ohio driver's license. He also registered his vehicle with Ohio's Bureau of Motor Vehicles. It appears to Covey Run therefore

5. Defendant Melvin H. Sanders is a natural person and, upon information and belief, a citizen of the State of Texas. Sanders represented to Covey Run and other parties that he was a managing officer of Defendant Washington Capital. Sanders was the primary person who negotiated the relevant transaction on behalf of Washington Capital and communicated with Covey Run's principals. In his email communications with Covey Run's representatives, Sanders represented that the principal address of Washington Capital is 1010 Connecticut Avenue, 11th Floor, Washington, D.C. 20036.[6]

6. Defendant L. Gregory Loomar is a natural person and, upon information and belief, a citizen of the State of Florida. Defendant Loomar is an attorney admitted to practice law in the State of Florida and is a member, officer, and/or director of Defendant Law Offices of L. Gregory Loomar, P.A. Defendant Loomar agreed to act as escrow agent and, as discussed further below, to hold in escrow the $1.2 million the parties agreed that Covey Run would contribute towards the project in Wyoming.[7]

7. According to the corporate records of the State of Florida, Defendant Law Offices of L. Gregory Loomar, P.A. is a professional association organized under the laws of Florida with its principal place of business in Plantation, Florida. Upon information and belief, the sole member, officer, and/or director of Defendant Law Offices of L. Gregory Loomar, P.A. is Defendant Loomar, who (upon information and belief) is a resident of the State of Florida. Together with Defendant Loomar, Defendant Law Offices of L. Gregory Loomar, P.A. agreed to

---

that Evans is a citizen of Ohio, and in no event a citizen of a state of which Covey Run is also a citizen.

[6] Sanders stated in an affidavit filed in a related case that he lived in Texas and owned real property in the state. *See* ECF #31 to Case No. 1:15-CV-00219-CKK.

[7] Public records show that Loomar owns real property in Broward County, Florida.

act as escrow agent and, as discussed further below, to hold in escrow the $1.2 million the parties agreed that Covey Run would contribute towards the project in Wyoming.[8]

8. Defendant Michael Blackwell (or Mike Blackwell) is a natural person and, upon information and belief, a resident and citizen of the State of Texas. Defendant Blackwell represented to Covey Run that he was a broker and was working on behalf of Defendant Washington Capital.[9]

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and 1367(a). The parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has *in personam* jurisdiction over Defendants because, upon information and belief, they have entered into contracts in this district. They have also communicated in this district in connection with the transactions at issue and by their acts and omissions in this district they have caused injury to Covey Run.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims against Defendants occurred in this district.

---

[8] The firm's website states that Loomar founded the firm in the State of Florida in 1992 and that the firm primarily serves clients located in South Florida.

[9] Blackwell stated in an affidavit filed in a related case that he lived in Texas and owned real property in the state. *See* ECF #17 to Case No. 1:15-CV-00219-CKK. Covey Run understands that Blackwell is registered to vote in the State of Texas.

**BACKGROUND FACTS**

12.     As stated above, Covey Run is a business established in 2010 to develop assisted living housing for seniors in Sheridan, Wyoming. Covey Run sought to purchase property in Wyoming for this purpose.

13.     Covey Run sought to secure funding to purchase and develop the property. Various investors of Covey Run contributed monies towards this project.

14.     A representative of Covey Run was introduced to Defendant Blackwell and another individual named Karen Baas, who represented that they were licensed brokers working on behalf of Defendant Washington Capital. Defendant Blackwell and Karen Baas in turn introduced Covey Run to Defendant Washington Capital and its main representative, Defendant Melvin Sanders.

15.     Washington Capital thereafter represented to Covey Run that it was a private equity firm created to assist companies in their lending needs and was associated with Lloyd Bancaire of Luxembourg, Standard Charter Bank of the United Kingdom, and Deutsche Bank of Germany. Washington Capital further represented that it would be able to receive financing from these banks. (Attached hereto as Exhibit 1 is a copy of that document.) Covey Run has since learned that Washington Capital, LLC never intended to secure funding for the project from these banks.

16.     Washington Capital and Sanders told Covey Run that they could fund the project in part through a loan of approximately $10 million they would obtain. The total cost of the project was anticipated to be $12 million.

17.     In addition, Washington Capital agreed to invest approximately $660,000 towards the project. Washington Capital represented that it had the money on hand. Together, the

$660,000 and $1.2 million would be used to leverage the $10 million loan to be obtained by Washington Capital.

18. Washington Capital (primarily through Sanders) represented that the source of the $10 million would be foreign investors, including the banks described above.

19. Washington Capital completed an Investor Commitment Letter and Questionnaire and provided it to Covey Run. The Questionnaire further noted that Washington Capital (through an entity called Atlantis Information Systems LLC) would invest $660,000 in the project.[10]

20. In addition, Washington Capital drafted and presented a Letter of Commitment to Covey Run, which the parties executed on or about May 8, 2014. Defendant Steve Evans signed the Letter of Commitment as Vice President of Washington Capital, and Andrew Auger as Managing Partner of Covey Run. That Letter of Commitment memorialized the parties' agreement. (Attached as Exhibit 2 are true and correct copies of the Letter of Commitment and Escrow Agreement)

21. The Letter of Commitment identified the escrow agent of the $1.2 million as Defendant L. Gregory Loomar of Defendant Law Offices of L. Gregory Loomar, P.A., in Plantation, Florida. It provided that Covey Run would wire transfer the $1.2 million to "L. Gregory Loomar, PA Escrow Account" at a Wells Fargo Bank, N.A. bank account. The parties also agreed that Loomar and his law office would hold the monies in "strict" accordance with the terms of the parties' Letter of Commitment. Upon information and belief, Loomar received a copy of the escrow agreement that was appended to the Letter of Commitment.

---

[10] Atlantis is a shell company used as a vehicle by Defendants Washington Capital, Lyles, Evans, Sanders, and Blackwell to perpetrate their fraud on Covey Run.

22.     Under section 2.2 of the Letter of Commitment, the parties agreed that the $1.2 million held in escrow would be "used first for the payments of the project['s] costs" and disbursements would be paid only for those purposes.

23.     Consistent with the terms of the Loan Agreement, Covey Run sent the $1.2 million in equity funds by wire transfer to Defendant Loomar in two installments, one payment on July 18, 2014 in the amount of $850,000 and another on August 11, 2014 in the amount of $350,000.  Defendant Loomar confirmed in a signed receipt that he had received the wire transfers for the equity money.[11]  Under those receipts, Loomar represented that he had sent the receipts to Covey Run, located at 340 S. Hwy 10, St. Cloud, Minnesota, and to Washington Capital, located at 1050 Connecticut Ave., NW, 10th Floor, Washington, D.C.  (Attached hereto as Exhibit 3 are copies of those receipts.)

24.     Thereafter, Washington Capital presented loan and financial information to Covey Run for it to sign.  In particular, Washington Capital presented a Loan Agreement and other documents concerning the $10 million loan.  Covey Run's representative(s) signed these Agreements and sent them through Federal Express to Washington Capital.  Washington Capital asked that the papers be sent to Steve Evans at an address in Manassas Park, Virginia.  Steve Evans signed the loan agreement and other documents on behalf of Washington Capital.  (Attached hereto as Exhibit 4 is a copy of that Loan Agreement.)  Defendant Marvin Sanders signed certain of the documents as managing officer of Washington Capital.  (Attached hereto as Exhibit 5 is a representative copy of this document.)

---

[11] There is a discrepancy between a receipt that Loomar produced for the $350,000 wire transfer and other records concerning the transaction.  Loomar's ledger report and Covey Run's records show that Covey Run wire transferred the equity money into Loomar's escrow account on August 11, 2014, but Loomar's receipt states that he received the money on July 18, 2014.

25.     Under the Loan Agreement, Washington Capital agreed to loan $10 million to Covey Run through separate payments called "advancements."  The first advance was due at closing after Covey Run had satisfied certain pre-requisites, including providing certain loan documents, title insurance, and financial statements to Washington Capital.  Washington Capital agreed to provide the $660,000 equity payment so that there would be sufficient funds to close.  Washington Capital never provided the funds.

26.     Washington Capital represented that closing would be accomplished 60 days after the escrow agent received the first equity funds, which would provide for a closing date of mid-to-late September 2014.  In addition, Washington Capital required that Covey Run provide updated feasibility/market studies and an appraisal letter, a Phase I Environmental Assessment, and an ALTA (land) survey.  In doing so, Covey Run incurred costs to meet Washington Capital's requirements.  Covey Run also incurred architectural fees and other expenses in anticipation of closing.

27.     The parties scheduled the date for closing on the loan and the purchase of the Wyoming property for November 1, 2014.  That closing date was changed a number of times to accommodate a variety of alleged concerns raised by Washington Capital.

28.     By December 15, 2015, Washington Capital had refused to close on the transaction.  Covey Run understands that Washington Capital did not want to put forth the $660,000 it had committed to the project and took issue with its title company's work as a pretense to avoid closing.  Washington Capital subsequently sent a cease and desist notice (through Defendant Sanders) to the title company that it was rescinding the parties' transaction.  (Attached hereto as Exhibit 6 is a copy of that letter.)

29.     Sanders, on behalf of Washington Capital, gave Covey Run three options: (a) that the parties' agreement be cancelled and the equity funds of $1.2 million be returned to Covey Run; (b) that the funds be left in the escrow account while Sanders searched for another title company to close the deal; or (c) that the equity funds be returned to Covey Run while Sanders located another title company.

30.     Covey Run initially selected option (c). Upon the return of the funds, Covey Run would put the funds into a trust account at Bremer Bank in St. Cloud, Minnesota. Washington Capital would put the $660,000 into escrow so that all of the equity funds would be available for closing. As discussed *infra*, when the equity funds were not returned to Covey Run after numerous promises and delays, Covey Run demanded the return of the equity funds without any conditions.

31.     Between December 15, 2015 and the filing of the original Complaint, Washington Capital sent correspondence to and had conversations with Covey Run on a number of occasions (primarily through Defendants Sanders) to assure Covey Run that it would receive the money. Specifically, Washington Capital represented to Covey Run that it would return the money. In addition, Sanders represented on behalf of Washington Capital to Covey Run that Washington Capital was speaking with a person named "Joan" at the Citibank branch office located in Arlington, Virginia, where Washington Capital has a bank account, and that there were delays in providing the $1.2 million back to Covey Run.

32.     In other instances, Washington Capital represented that its President (Jemel M. Lyles, Sr.), which it only identified in emails as "J," was about to close on another transaction and would return the $1.2 million once this transaction closed.

33. Because Covey Run was concerned about the return of the money, in mid-January 2015, Covey Run asked Washington Capital to produce evidence that its bank account contained the $1.2 million owed. On January 16, 2015, Defendant Sanders forwarded a letter to Covey Run, purportedly from Citibank, allegedly confirming that Washington Capital's bank account contained $1.8 million in funds. The letter was dated January 14, 2015, and signed by Steven Jackson, Vice President of Citigroup Private Wealth Banking. (Attached as Exhibit 7 is a copy of that letter.)

34. The letter appears to be a forgery. The Citibank logo and letterhead appear to have been cut and pasted to make it appear as though the letter is authentic. In addition, Covey Run confirmed with Citibank that there are no Vice Presidents within the company named Steve Jackson and that the letter did not appear to come from Citibank.

35. Thereafter, Covey Run demanded that Washington Capital return the funds to Covey Run by January 20, 2015. Washington Capital failed to do so, and Covey Run then served Washington Capital with a formal demand letter dated January 21, 2015, seeking the immediate return of the funds. (Attached as Exhibit 8 is a copy of that letter.) Despite repeated assurances from Washington Capital that it would return the funds to Covey Run, to date it has failed to return any of the funds.

36. In addition, on January 21, 2015, Covey Run's representative wrote to Defendant Loomar asking about the status of the $1.2 million held in escrow. (Attached as Exhibit 9 is a copy of that letter.) Loomar responded that he did not have any of Covey Run's money in escrow and produced ledger reports showing that he had transferred the money to Defendant Jemel M. Lyles, Sr. on the very same days Covey Run had wire transferred the money to him. (Attached as Exhibit 10 is a copy of those documents.)

37.     In particular, documents produced by Loomar to Covey Run show that, as to the wire transfer of $850,000 made on July 18, 2014, Loomar immediately disbursed approximately $847,000.00 to Washington Capital.  Loomar and his law office retained approximately $2,900.00 as an escrow agent fee.  (*Id.*)

38.     Similarly, as to the wire transfer Covey Run made on August 11, 2014, Loomar wire transferred the money to Washington Capital that same day, sending approximately $348,000 after taking approximately $875.00 for himself.  (*Id.*)

39.     Loomar received from Washington Capital an email dated July 16, 2014 (which pre-dates the wire transfers), from J.M. Lyles, Sr., purporting to be the Chief Executive Officer of Washington Capital to wire transfer the $1.2 million to a Citibank Account in Arlington, Virginia, and for Loomar to retain certain amounts for his fees.  (Attached as Exhibit 11 is a copy of that document.)

40.     At no time did Covey Run authorize or otherwise consent to the disbursement of funds to Washington Capital.   Loomar and his law office failed to contact Covey Run prior to disbursing the funds, and failed to notify Covey Run after they had disbursed the funds.  Covey Run only became aware of these disbursements after it sent its January 21, 2015 letter to Loomar.

41.     Loomar and his law office failed to act with the duty of care required by an escrow agent to safeguard the funds pursuant to the parties' Letter of Commitment and escrow agreement.

42.     In addition, Covey Run subsequently learned that "J" stands for Defendant Jemel M. Lyles, Sr., and that Lyles (along with certain other defendants) was ordered to pay

approximately $900,000 in restitution in 2009 in connection with a mortgage fraud scheme committed in the State of Maryland.

43. Covey Run also learned that certain Washington Capital's representations about investing $660,000 towards the project is a fraud, and understands that Washington Capital does not have such funds and did not intend to contribute money towards the Wyoming project.

44. In December 2014 and in January and February of 2015, Defendants Washington Capital, Jemel M. Lyles, Marvin Sanders, and Michael Blackwell, in addition to nonparty Karen Baas, represented on a number of occasions that they had wired or were wiring the $1.2 million in equity funds to Covey Run. On February 4, 2015, Defendants sent a purported confirmation for a wire they claimed they sent to Covey Run, but excluded the name of the institution that initiated the wire and other critical information that would enable Covey run to track the money.

45. As of the date of the filing of this Amended Complaint, Covey Run has not received any wire transfer from Washington Capital (or its representatives), and Washington Capital has refused to return the money owed to Covey Run.

### Count I
### (Breach of Contract – Against Washington Capital, LLC)

46. The allegations of paragraphs 1 through 45 are hereby incorporated by reference.

47. The parties agreed through various documents that Washington Capital would lend Covey Run certain monies necessary to develop a senior housing project in Sheridan, Wyoming.

48. Based on Washington Capital's representations (as made in writing and orally through its representatives and agents), Covey Run agreed to the Letter of Commitment and transferred $1.2 million of its own money to an escrow account.

49.     Under the parties' agreement, Washington Capital agreed that the $1.2 million would be used towards the Wyoming development.

50.     Washington Capital breached these and other provisions of the parties' contracts in accessing the money without the prior written knowledge and consent of Covey Run.

51.     As a result of the breaches of the parties' agreement by Washington Capital Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages in excess of $1.2 million.

52.     Covey Run is entitled to damages, including without limitation, an award of its reasonable attorneys' fees and costs.

### Count II
**(Fraud • Against Defendants Washington Capital, LLC, Jemel M. Lyles, Marvin Sanders, and Steven Evans)**

53.     The allegations of paragraphs 1 through 52 are hereby incorporated by reference.

54.     As discussed above, Covey Run entered into a Letter of Commitment in which Washington Capital made a number of misrepresentations about itself and the loan funds it would provide to Covey Run.  Based on the misrepresentations made by Washington Capital through its representatives (Defendants Lyles, Evans, and Sanders) that Washington Capital was a reputable private equity firm, that it had sufficient funds on hand, and that it would be able to obtain a sizeable loan, Covey Run entered into the Letter of Commitment and other agreements.

55.     Under the Letter of Commitment, Covey Run agreed to transfer $1.2 million of its money into an equity escrow for use towards the costs of the development in Wyoming. Washington Capital represented that Defendant Loomar and his law office would hold this money in escrow and that the money would be used to leverage the $10 million loan.  Covey Run relied on these representations to its detriment.

56. Washington Capital (through Defendant Lyles) improperly and fraudulently accessed the equitable funds. Defendant Loomar and his law office disbursed the money to Defendants Washington Capital, Lyles, Sanders, and Evans without Covey Run's consent and in violation of the parties' agreements, including the Letter of Commitment.

57. Washington Capital (with the assistance of the other Defendants) never intended to loan the funds towards the project.

58. In addition, Washington Capital represented that it would contribute $660,000 of its own funds to the project. It represented that it had the money on hand to contribute to the project. This representation was not true. Defendants Washington Capital, Lyles, Sanders, and Evans used this purported contribution as one mechanism to induce Covey Run to enter into the transaction and put the $1.2 million into escrow. Had Covey Run known the true facts and the Defendants' fraudulent intent, it would not have agreed to provide the funds.

59. Further, after Covey Run demanded the return of its money, Defendants presented a forged letter purportedly from Citibank in which Washington Capital represented, falsely, that it had $1.8 million in its account.

60. Had Covey Run known that the representations of Defendants were false, it would not have entered into the Letter of Commitment or other agreements with Washington Capital.

61. As a direct and proximate result of Defendants' fraudulent acts, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in excess of $1.2 million exclusive of costs and attorneys' fees.

### Count III
### (Negligent Misrepresentation – Against Defendant Michael Blackwell)

62. The allegations of paragraphs 1 through 61 are hereby incorporated by reference.

63.     Defendant Blackwell negligently represented to Covey Run that Defendant Washington Capital was a reputable private equity firm with ties to major foreign financial institutions (namely, Lloyd Bancaire of Luxembourg, Standard Charter Bank of the United Kingdom, and Deutsche Bank of Germany).  He further represented that these foreign financial institutions would fund the Wyoming project.

64.     Defendant Blackwell knew or should have known that these representations were false.

65.     Defendant Blackwell intended or should have recognized that Covey Run would likely be imperiled by action taken in reliance upon his misrepresentations.

66.     Covey Run relied on the misrepresentations of Defendant Blackwell to its detriment.  Had Covey Run known the true facts, it would not have entered into the Letter of Commitment or other agreements with Washington Capital, and would not have transferred $1.2 million in funds for the project.

67.     As a direct and proximate result of Defendant Blackwell's negligent misrepresentations, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in excess of $1.2 million exclusive of costs and attorneys' fees.

### Count IV
### (Conversion – Against Defendants Washington Capital, LLC, Jemel M. Lyles, Marvin Sanders, and Steven Evans)

68.     The allegations of paragraphs 1 through 67 are hereby incorporated by reference.

69.     As discussed in detail above, Defendants Washington Capital, Lyles, Sanders, and Evans induced Covey Run to enter into the transaction.  These Defendants misappropriated the funds that Covey Run had deposited into an escrow account.

70. These Defendants diverted the funds (the $1.2 million) with an intention to permanently deprive Covey Run of such funds.

71. Having misappropriated these funds, Defendants are liable to Covey Run for the full amount of the funds plus punitive damages.

72. As a direct and proximate result of Defendants' acts, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in excess of $1.2 million, exclusive of costs and attorneys' fees.

### Count V
**(Breach of Fiduciary Duty – Against Defendant L. Gregory Loomar and Defendant Law Offices Of L. Gregory Loomar, P.A.)**

73. The allegations of paragraphs 1 through 72 are hereby incorporated by reference.

74. An escrow agent has a duty to exercise ordinary skill and diligence in handling escrowed funds. An escrow agent is a trustee of all parties and has contractual and fiduciary duties to all parties to the escrow arrangement.

75. Defendant Loomar and Defendant Law Offices of L. Gregory Loomar, P.A. agreed to act as escrow agent for the parties and to hold in escrow the $1.2 million Covey Run had deposited.

76. Defendant Loomar and Defendant Law Offices of L. Gregory Loomar, P.A. knew that they were acting as escrow agent for the parties and that they were required to act with the requisite duty of skill and care to safeguard the funds deposited in escrow.

77. Defendant Loomar acknowledged in receipts that he received the $1.2 million in equity funds from Covey Run.

78. Defendant Loomar and Defendant Law Offices of L. Gregory Loomar, P.A., however, disregarded their duty of skill and care in wrongly and negligently disbursing the

money to Defendants Washington Capital, Lyles, Sanders, and Evans without appropriate authorization and in violation of the parties' agreement.

79.     After Covey Run had deposited the money into the care of Defendant Loomar and Defendant Law Offices of L. Gregory Loomar, P.A. as escrow agent for the parties, they immediately transferred the money to Defendants Washington Capital, Lyles, Sanders, and Evans, without even confirming if the conditions precedent for disbursement had been met.

80.     In addition, at no time did Defendant Loomar or Defendant Law Offices of L. Gregory Loomar, P.A. seek Covey Run's consent to disburse the equitable funds to these Defendants. They also failed to alert Covey Run of the disbursements they made.

81.     As a direct and proximate result of Defendant Loomar's and Defendant Law Offices of L. Gregory Loomar, P.A.'s breach of their fiduciary duty, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in excess of $1.2 million exclusive of costs and attorneys' fees.

**<u>Count VI</u>**
**(Professional Negligence – Against Defendants L. Gregory Loomar and Law Offices of L. Gregory Loomar, PA)**

82.     The allegations of paragraphs 1 through 81 are incorporated herein by reference.

83.     Defendant L. Gregory Loomar is licensed to practice law under the laws of the State of Florida. Covey Run understands that he actively practices law in that state and promotes his legal services on his website.

84.     Defendant L. Gregory Loomar is a member, officer, or director of, and practices out of the law firm of Defendant Law Offices of L. Gregory Loomar, PA.

85. Defendants L. Gregory Loomar and Law Offices of L. Gregory Loomar, PA accepted and agreed to act as escrow agents for Plaintiff Covey Run and Defendant Washington Capital and to hold in escrow the $1.2 million Covey Run had provided to them.

86. As an attorney and escrow agent, Defendant Loomar was required to act with the requisite duty of skill and care to safeguard the funds provided to him.

87. Defendant Loomar acknowledged in receipts he provided to Covey Run that he had received the $1.2 million in equity funds from Covey Run.

88. Defendant Loomar, however, disregarded his duty and wrongly and negligently disbursed the money to Defendants Washington Capital, Lyles, Sanders, and Evans without appropriate authorization.

89. After Covey Run had provided the money to Defendant Loomar for safekeeping, he immediately transferred the money to Defendants Washington Capital, Lyles, Sanders, and Evans without confirming if the conditions precedent for disbursement had been met.

90. At no time did Defendant Loomar seek Covey Run's consent to disburse the equitable funds to these Defendants. He also failed to alert Covey Run of the disbursements he had made.

91. The actions of Defendant Loomar and Defendant Law Offices of L. Gregory Loomar, PA in failing to safeguard the escrow money are in violation of applicable law, including Fla. Stat. Ann. § 621.07.

92. As a direct and proximate result of Defendant Loomar's and Defendant Law Offices of L. Gregory Loomar PA's professional negligence, Covey Run has suffered and is continuing to suffer irreparable injury, and has incurred monetary damages in excess of $1.2 million exclusive of costs and attorneys' fees.

## **Prayer for Relief**

WHEREFORE, Plaintiff Covey Run prays that this Court:

a. Grant judgment to Covey Run and against all Defendants based upon the claims set forth above;

b. Award Covey Run compensatory damages against all Defendants, including without limitation, for the claims relating to the misappropriation of $1.2 million as set forth above;

c. Award Covey Run punitive and exemplary damages against each of the Defendants, jointly and severally, as permitted by law;

d. Award Covey Run prejudgment interest;

e. Award Covey Run its costs and attorneys' fees incurred in connection with this action pursuant to the parties' agreements and under applicable law; and

f. Award Covey Run such other relief as this Court may deem just and proper.

                                                Respectfully submitted,

                                                /s/ Iris Figueroa Rosario
                                                Eric L. Yaffe (Bar No. 439750)
                                                Iris Figueroa Rosario (Bar No. 477009)
                                                GRAY, PLANT, MOOTY, MOOTY
                                                  & BENNETT, P.A.
                                                The Watergate – Suite 700
                                                600 New Hampshire Avenue, N.W.
                                                Washington, D.C. 20037
                                                Tel:   (202) 295-2200
                                                Fax:   (202) 295-2250
                                                eric.yaffe@gpmlaw.com
                                                iris.rosario@gpmlaw.com

Dated:  August 31, 2016                             *Attorneys for Plaintiff*